UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DEMEATRIUS TATE,

                        Petitioner,                    Case Number: 03-10056-BC
                                                      Honorable David M. Lawson

v.

WILLIAM OVERTON, Director of the
Michigan Department of Corrections, and
S.L. BURT, Warden,

                        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

       The petitioner, Demeatrius Tate, a state inmate currently incarcerated at the Southern Michigan Correctional Facility in Jackson, Michigan, has filed through counsel a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 1998 convictions for assault with intent to rob while armed, Mich. Comp. Laws § 750.89, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, carrying a concealed weapon, Mich. Comp. Laws § 750.227, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b, in Kent County, Michigan. The petitioner was sentenced to concurrent prison terms of twelve to thirty-five years for the assault with intent to rob; six to ten years for the assault with intent to do great bodily harm, and three to five years for carrying a concealed weapon, along with a consecutive two-year prison term for the felony firearm conviction. He contends that prosecutorial misconduct deprived him of a fair trial and his trial counsel rendered ineffective assistance for failing to object to the prosecutor's improper statements. The respondent asserts that the petitioner's claims are procedurally defaulted and otherwise without merit. The Court finds that the claims do not warrant habeas relief, and therefore the petition will be denied.

I.

The petitioner's convictions arise from the shooting of Eugene Bradshaw on December 22, 1997 in Plainfield Township, Michigan. At the time of the shooting, the petitioner was sixteen years old.

Bradshaw testified at trial that he contacted Jason Washington, a friend of the petitioner, on December 22, 1997 because he wanted to purchase cocaine from Washington as he had done on previous occasions. Washington told Bradshaw he could sell him an ounce of cocaine and the two scheduled a meeting at a Meijer's store parking lot. On his way to Meijer's, Bradshaw picked up his friend Scott Kavaluskis. When Bradshaw arrived at Meijer's, he dropped Kavaluskis off in front of the store and drove around to the back. At that time, he removed a stun gun from a locked box in his vehicle and put it in his pocket.

Bradshaw looked for Washington but instead saw the petitioner, from whom he also previously had purchased cocaine and whom he recognized as an associate of Washington. The petitioner got into Bradshaw's vehicle, said that he had the cocaine, and quickly showed Bradshaw a bag of white powder. The petitioner asked to see the money. Bradshaw testified that he pulled the money out of his pocket, showed it to the petitioner, and then put it back into his pocket. Bradshaw asked the petitioner to place the baggy containing the cocaine on the seat so he could look at it, but the petitioner said that he needed the money first. When they could not agree on a way to exchange the money and drugs, Bradshaw asked if he could just buy $100 worth of crack cocaine instead and work out another deal some other time. Bradshaw testified that the petitioner agreed, and as Bradshaw took out the money, the petitioner fumbled with something, then quickly turned his back against the passenger door and said, "[Y]ou're gonna give me the money." Trial Tr.,

-2-

10/8/1998, at 169.  Bradshaw testified that when he saw the petitioner pointing a gun at him, he grabbed the gun, and the petitioner fired instantly, striking Bradshaw in the side.  As they struggled over the gun, the petitioner opened the passenger door of the truck and Bradshaw shoved him. Bradshaw testified that as the petitioner fell out of the truck, another bullet struck him in the neck.

The petitioner testified in his own defense.  He admitted shooting Bradshaw, but claimed that he did so in self-defense after Bradshaw started "acting crazy" and pulled out something black that the petitioner thought was a gun.  Trial Tr., 10/14/1998, at 15.  The petitioner testified that he climbed into Bradshaw's vehicle because he intended to buy marijuana from Bradshaw, and then Bradshaw began driving, explaining that they had to go get the marijuana.  The petitioner testified that Bradshaw asked him if he knew where he could get an ounce of cocaine, and the petitioner told Bradshaw that he could not get that much.  When the petitioner told Bradshaw that he could not get the cocaine, Bradshaw became agitated.  The petitioner then saw something black in Bradshaw's hand that he thought was a gun, so he drew his own gun.  The petitioner told Bradshaw to let him out of the car and reached to grab the door handle, but Bradshaw leaned over the petitioner and pulled the door shut.  Bradshaw then grabbed the barrel of the petitioner's gun.  The petitioner testified that the gun discharged as they fought over it, and he denied intentionally pulling the trigger.  The petitioner testified that the gun discharged twice while he and Bradshaw were fighting over it.  After he jumped out of the truck, the petitioner dropped the gun, and it discharged again. The petitioner testified that after the shooting he ran back to his sister's apartment, changed his clothes, and threw the gun in a dumpster.  After the police contacted his mother, the petitioner turned himself in at approximately 10:00 that evening.

-3-

Police investigators found four spent shell casings inside Bradshaw's truck and one outside the truck on the street. The shell casings were fired from the gun the petitioner admitted to possessing when he met Bradshaw. A firearms expert testified that the petitioner's gun was a semi-automatic pistol, which fires only once each time the trigger is pulled.

On October 14, 1998, a Kent County jury found the petitioner guilty of assault with intent to rob while armed, assault with intent to do great bodily harm less than murder, carrying a concealed weapon, and felony firearm. On December 10, 1998, the judge sentenced the petitioner to the prison terms noted earlier.

The petitioner appealed his convictions to the Michigan Court of Appeals, presenting the following claims:

I.    The trial court denied Mr. Tate's state and federal due process rights to a fair trial where it gave the jury an inadequate instruction on self-defense.

II.   The prosecutor violated Mr. Tate's state and federal due process rights to a fair trial by his continuous misconduct.

   A.   The prosecutor deprived Mr. Tate of a fair trial where he evoked sympathy for the complainant.

   B.   The prosecutor denied Mr. Tate a fair trial where he elicited testimony that Mr. Tate was a problem child.

   C.   The prosecutor denied Mr. Tate a fair trial where he elicited testimony that Mr. Tate was unemployed and made prejudicial references to his unemployment in closing argument.

   D.   The prosecutor denied Mr. Tate a fair trial where he introduced evidence of Washington's absence and flight and argued that this evidence incriminated Mr. Tate.

   E.   The prosecutor deprived Mr. Tate of a fair trial where he introduced evidence of the "hit-and-lick" practice, when it was irrelevant and unfairly prejudicial.

F. The prosecutor denied Mr. Tate a fair trial and violated his state and federal constitutional rights to remain silent where he elicited testimony that Mr. Tate's mother directed the police not to speak with Mr. Tate at the time of his arrest and then asked Mr. Tate if he spoke with them, or alternatively this matter was irrelevant and substantially more prejudicial than probative.

G. The prosecutor denied Mr. Tate a fair trial where he misstated Mr. Tate's testimony during his closing argument.

H. The prosecutor denied Mr. Tate a fair trial where he unfairly disparaged defense counsel.

I. The cumulative effect of the numerous instances of prosecutorial misconduct denied Mr. Tate a fair trial.

III. Mr. Tate did not receive a fair trial where his state and federal constitutional rights to the effective assistance of trial counsel were violated.

A. Defense counsel was ineffective and Mr. Tate was denied a fair trial where defense counsel elicited prejudicial opinion testimony from a police officer indicating that he believed Bradshaw and did not believe that Mr. Tate acted in self-defense.

B. Defense counsel was ineffective and Mr. Tate was denied a fair trial where defense counsel failed to object to the inadequate instruction that the trial court gave on self-defense.

C. Defense counsel was ineffective and Mr. Tate was denied a fair trial where defense counsel failed to object to the prosecutor's numerous instances of misconduct.

IV. Mr. Tate's sentence of 12 to 35 years for assault with intent to rob armed is disproportionate to the seriousness of the circumstances surrounding the offense and this offender.

The Michigan Court of Appeals affirmed the petitioner's convictions and sentences. *People v. Tate*, No. 217375 (Mich. Ct. App. March 2, 2001). That court also denied the petitioner's motion for rehearing. *People v. Tate*, No. 217375 (Mich. Ct. App. Apr. 26, 2001). The petitioner then filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the first three

-5-

claims he presented to the Michigan Court of Appeals.  The Michigan Supreme Court denied leave

to appeal.  *People v. Tate*, 465 Mich. 916, 636 N.W.2d 529 (2001).

The petitioner's attorney filed the pending petition for a writ of habeas corpus on February

25, 2003, presenting the following claims:

I.      The prosecutor violated Mr. Tate's federal constitutional due process right to a fair trial by his continuous misconduct.  A writ of habeas corpus must issue.

A.      The prosecutor deprived Mr. Tate of a fair trial where he evoked sympathy for the complainant.

B.      The prosecutor denied Mr. Tate a fair trial where he elicited testimony that Mr. Tate was a problem child.

C.      The prosecutor denied Mr. Tate a fair trial where he elicited testimony that Mr. Tate was unemployed and made prejudicial references to his unemployment in closing argument.

D.      The prosecutor denied Mr. Tate a fair trial where he introduced evidence of Washington's absence and flight and argued that this evidence incriminated Mr. Tate.

E.      The prosecutor deprived Mr. Tate of a fair trial where he introduced evidence of the "hit-and-lick" practice, when it was irrelevant and unfairly prejudicial.

F.      The prosecutor denied Mr. Tate a fair trial and violated his state and federal constitutional rights to remain silent where he elicited testimony that Mr. Tate's mother directed the police not to speak with Mr. Tate at the time of his arrest and then asked Mr. Tate if he spoke with them, or alternatively this matter was irrelevant and substantially more prejudicial than probative.

G.      The prosecutor denied Mr. Tate a fair trial where he misstated Mr. Tate's testimony during his closing argument.

H.      The prosecutor denied Mr. Tate a fair trial where he unfairly disparaged defense counsel.

I.      The cumulative effect of the numerous instances of prosecutorial misconduct denied Mr. Tate a fair trial.

II.     Mr. Tate's federal constitutional right to the effective assistance of counsel was denied by trial counsel's failure to object to numerous instances of misconduct.  A writ of habeas corpus must issue.

The respondent contends that the petitioner procedurally defaulted the claims in his first ground for relief by failing to object to the prosecutor's conduct, and the claims are without merit because counsel was not ineffective for failing to object.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.

-7-

1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted).  Additionally, this Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.  The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .

-8-

> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner claims that he is entitled to habeas corpus relief because his right to a fair trial was violated by the individual instances and cumulative effect of the prosecutor's misconduct, which are enumerated and described in the recitation of his issues. The respondent argues that all the petitioner's claims of prosecutorial misconduct except his second and sixth are barred from review in this Court because defense counsel failed to object to the conduct at trial, and the claims are therefore procedurally defaulted. The Court will first consider the merits of the undefaulted claims.

Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-46 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). The Court must focus on

-9-

"the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The Sixth Circuit has prescribed four factors to consider when analyzing such claims: (1) the likelihood that the statements would prejudice the defendant or mislead the jury; (2) whether the remarks were isolated or part of a pattern; (3) whether the prosecutor's statements "were deliberately or accidentally presented to the jury"; and (4) whether the other evidence against the defendant was substantial. *Gall v. Parker*, 231 F.3d 265, 311 (6th Cir. 2000) (citing *United States v. Carroll*, 26 F.3d 1380, 1385-87 (6th Cir. 1994)).

### 1.

The petitioner's second cited instance of prosecutorial misconduct focuses on the prosecutor's elicitation of testimony that the petitioner was a problem child. Becky Washington testified in response to the state's questioning that the petitioner lived with her at one time because he had a problem with his mother. The petitioner also objects to the following line of questioning pursued by the prosecutor with the petitioner's mother, Tina Tate:

[PROSECUTOR]: Have [sic]you been having problems with Mr. Tate up to that

[p]oint?

[MS. TATE]: Up to what point, sir?

[PROSECUTOR]: Up to the shooting?

[MS. TATE]: My son was a teenager and still is a teenager, and I don't know a teenager that didn't give parents problems.

[PROSECUTOR]: Criminal problems?

[DEFENSE COUNSEL]: I'm going to object.

THE COURT: Sustained.

-10-

[PROSECUTOR]: Had you made any cries for help during that period?

[MS. TATE]: During what time period?

[PROSECUTOR]: From the time period of the shooting?

[MS. TATE]: Before the time period of the shooting?

[PROSECUTOR]: Yes.

[DEFENSE COUNSEL]: For whom, your Honor?

[PROSECUTOR]: With the defendant.

[MS. TATE]: I still misunderstand your question.

[PROSECUTOR]: Had you requested from any institution, agency, etcetera help with –

[DEFENSE COUNSEL]: (Interposing) It's an objectional [sic] question, your Honor.

THE COURT: I'm going to sustain the objection, Mr. Floyd.

Trial Tr., 10/12/1998, at106-07.

The Michigan Court of Appeals held that questioning these witnesses "about any problems defendant may have had with his mother was of little relevance," but "we do not believe the brief questioning on the topic denied defendant a fair trial." *Tate*, slip op. at 3. This holding does not contravene or unreasonably apply Supreme Court precedent. The prosecutor's questions about problems the petitioner caused his mother, was not relevant except to show the petitioner's bad character, which is not a proper evidentiary purpose under Michigan law. *See* Mich. R. Evid. 404(a). However, the trial judge intervened to prevent the line of questioning from going very far. The state court's assessment that little or no prejudice resulted from the prosecutor's misconduct was reasonable in light of all the other evidence in the case. The jury was called upon to evaluate the

-11-

assault charges in light of the petitioner's claim of self-defense.  The brief questioning quoted above did not violate the petitioner's rights under the Due Process Clause.

2.

In his sixth claim of prosecutorial misconduct, the petitioner alleges that the prosecutor improperly elicited testimony about the petitioner's pre-arrest silence and improperly questioned the petitioner regarding his post-arrest silence.

Evidence of the petitioner's silence at the time of his arrest, came from testimony by Detective Gaylord Schuur that when police arrived to arrest the petitioner, his mother instructed them not to talk to her son.  The prosecutor then asked Detective Schuur whether he knew if the petitioner had told his mother what happened.  Detective Schuur replied that he did not know.  The petitioner argues that this exchange prompted the jury to infer that the petitioner's mother told the police not to question her son because she thought he had something to hide.

The Supreme Court has held that a defendant's prearrest silence may be used for impeachment purposes.  *Jenkins v. Anderson*, 447 U.S. 231, 240 (1980).  However, the Sixth Circuit Court of Appeals has held that "the use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment's privilege against self-incrimination."  *Combs v. Coyle*, 205 F.3d 269, 283 (2000).

In *Combs*, the defendant was convicted of two counts of aggravated murder in the shooting deaths of his ex-girlfriend and her mother.  Immediately after shooting the victims, the defendant was shot by a police officer.  At trial, a police officer testified that when the defendant was being placed into an ambulance, the police officer asked the defendant what happened.  The police officer testified that the defendant replied that the officer should "talk to my lawyer."  *Combs*, 205 F.3d at

-12-

279. Immediately after this testimony was received, the trial court instructed the jury not to draw any inferences for or against the defendant based upon that statement. However, the trial court also instructed the jury that the statement could be considered as it related to the elements of purpose and prior calculation and design. In closing argument, the prosecutor argued that the statement was evidence of the defendant's intent. *Id.*

The court of appeals analyzed the statement as a comment on prearrest silence. *Id.* The panel reasoned that "permitting the use of a defendant's prearrest silence as substantive evidence of guilt would greatly undermine the policies behind the privilege against self-incrimination while adding virtually nothing to the reliability of the criminal process." *Combs*, 205 F.3d at 285-86. The court therefore held that "the prosecutor's comment on [the defendant's] prearrest silence in its case in chief and the trial court's instruction permitting the jury to use [the defendant's] silence as substantive evidence of guilt violated [the defendant's] Fifth Amendment rights." *Id.* at 286.

In contrast to the circumstances presented in *Combs*, the prosecutor in this case did not argue that the petitioner's mother's expressed desire that the police should not talk to her son was substantive evidence of the petitioner's guilt. Nor did the trial court give an instruction permitting the jury to make such an inference. The Court concludes that this testimony did not violate the petitioner's Fifth Amendment rights because it was not offered as substantive evidence of guilt.

The petitioner also claims that the prosecutor improperly questioned him regarding his post-arrest silence. On cross-examination of the petitioner, the prosecutor posed the question, "When you spoke with the police, you didn't say anything, correct?" Trial Tr., 10/14/1998, at 44-45. Defense counsel immediately objected. Following a sidebar discussion, the prosecutor proceeded with a different line of questioning.

-13-

The Michigan Court of Appeals held that the prosecutor's question was "unquestionably improper," but it did not deprive the petitioner of a fair trial. *Tate*, slip op. at 3. The court reasoned:

> Defendant did not answer the question, the error was not highlighted, and the trial court sustained an objection to the inquiry. The prosecution also did not argue that defendant's silence was evidence of his guilt. For these reasons, we find that the error did not amount to prosecutorial misconduct requiring reversal.

*Id.*

The use of a defendant's silence at the time of arrest and after receiving *Miranda* warnings to impeach the defendant violates the Due Process Clause. *Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976). However, the Supreme Court has held that a single, unanswered question about a defendant's post-arrest silence will not violate touch upon due process rights if proper curative measures are taken following the question. *See Greer v. Miller*, 483 U.S. 756, 759 (1987). In that case, the facts paralleled those now before this Court. The prosecutor had asked Miller why he did not assert his innocence when he was arrested. Defense counsel immediately objected, and the trial court sustained the objection and told the jury to ignore the question. *Id.* The trial court later instructed the jury to disregard all questions to which objections were sustained. *Id.* The Supreme Court held, first, that Miller's rights as described in *Doyle* were not violated by the question because the trial court did not permit specific inquiry or argument respecting Miller's post-*Miranda* silence; and second, that the misconduct of the prosecutor had not deprived Miller of a fair trial because the remark was a single question, followed by an objection and a curative instruction, and the evidence was sufficient to support the jury's verdict. *Greer*, 483 U.S. at 766-67; *see also Tinsley v. Million*, 399 F.3d 796, 814 (6th Cir. 2005).

In the present case, the question regarding the petitioner's silence was brief and the petitioner was not required to answer. Defense counsel promptly objected, and after a bench conference, the

-14-

prosecutor pursued a different line of questioning.  The prosecutor did not refer to the petitioner's

silence in closing arguments, and the trial court instructed the jury that the lawyers' questions to the

witnesses are not evidence.  Finally, the evidence against the petitioner was substantial.  The

prosecutor's misconduct by asking the question regarding the petitioner's silence did not result in

prejudice to the petitioner or deprive him of due process.  Therefore, the petitioner is not entitled to

habeas corpus relief on this claim.

B.

The respondent argues that the petitioner's remaining claims of prosecutorial misconduct are

procedurally defaulted because the petitioner failed to object when they occurred at trial.  The

doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas review
> of the claims is barred unless the prisoner can demonstrate cause for the default and
> actual prejudice as a result of the alleged violation of federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  Application of the cause-and-prejudice bar may

be avoided if a petitioner "presents an extraordinary case whereby a constitutional violation resulted

in the conviction of one who is actually innocent."  *Rust v. Zent,* 17 F.3d 155, 162 (6th Cir. 1994);

*see Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule

applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with

that state procedural rule.  *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *see also Warner*

*v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992).  Additionally, the last state court from

which the petitioner sought review must have invoked the state procedural rule as a basis for its

-15-

decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. Finally, the procedural default must rest on an "adequate and independent" state ground. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

In this case, it appears that a state procedural rule was in place during the relevant time, namely that a defendant must object at trial to instances of prosecutorial misconduct. Although Michigan state courts "frequently waive the contemporaneous objection rule when they perceive the issue to have significant constitutional import," the contemporaneous objection rule was firmly established with respect to claims of prosecutorial misconduct at the time of the petitioner's trial. *Bentley v. Bock*, 239 F. Supp. 2d 686, 693-94 (E.D. Mich. 2002). Therefore, the contemporaneous objection rule with respect to claims of prosecutorial misconduct is an adequate and independent state ground on which to deny relief. *See id.*

It also appears that the Michigan courts actually enforced the procedural rule in this case. The last state court to issue a reasoned opinion on these claims, the Michigan Court of Appeals, held that the claims "were not preserved with an appropriate objection at trial." *Tate*, slip op. at 2. The court then reviewed the unpreserved claims for plain error, concluding that in each of the claims "the prosecutor's conduct was either proper or a curative instruction would have alleviated any prejudice." *Tate*, slip op. at 3. The court of appeals further held that the petitioner had not shown that he was prejudiced by defense counsel's failure to object to the prosecutor's actions. *Ibid.* In fact, the efficacy of the contemporaneous objection rule was demonstrated in this case when the prosecutor's improper conduct was staunched by the trial court upon objection by defense counsel, as noted above.

-16-

Because it appears that the petitioner has procedurally defaulted these prosecutorial misconduct claims, the remaining question is whether the petitioner has demonstrated "cause" for the failure to adhere to the procedure in place, and "prejudice" that flows the application of the rule. *See Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006). Ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002). In fact, a "claim of ineffective assistance of counsel . . . can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim." *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).

The petitioner alleges in his second ground for relief that his trial attorney was ineffective for failing to object to certain instances of alleged prosecutorial misconduct.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if counsel's representation falls below an "objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the

-17-

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687.

To determine whether defense counsel's failure to object to the alleged instances of prosecutorial misconduct fell outside the wide range of professionally competent assistance, the court will evaluate the cited instances of prosecutorial misconduct to determine if competent counsel would have objected at trial.

1.

The petitioner first contends that the prosecutor committed misconduct when he evoked sympathy for the complainant in his opening statement and closing argument.  The petitioner objects specifically to the following excerpt from the prosecutor's opening statement:

> Before December 22, 1997, Mr. Bradshaw could walk just like you and I, with every bit of liberty and every bit of freedom.  But when he was shot with those bullets, he fell from his truck, he hit his head on the pavement, and because of being shot with those bullets, he suffered paralysis.
>
> Mr. Bradshaw, as you will see, is better today.  He is up, and he's walking a little bit. His arm is still a little stiff.  He can get around with a cane.  He was wheelchair bound for a while, he spent a lot of time in the hospital, but he's getting better. We're not asking for sympathy.  We're simply asking for justice.

Trial Tr., 10/6/1998, at 41.

In addition, the petitioner objects to the following portion of the prosecutor's closing argument:

> Two bullets lodged inside the body of Gene Bradshaw.  Every time that Eugene Bradshaw looks in the mirror and he sees his hand, he seas Demeatrius Tate.  Every time Eugene Bradshaw looks in the mirror and he sees his scar, he sees Demeatrius

-18-

Tate. Every time Eugene Bradshaw looks in the mirror and sees that scar on his belly, he sees Demeatrius Tate.

Trial Tr., 10/14/1998, at 66.

The Supreme Court has held that victim impact evidence and argument is not *per se* improper. *Byrd v. Collins*, 209 F.3d 486, 532 (6th Cir. 2000) (citing *Payne v. Tennessee*, 501 U.S. 808 (1991)). The Sixth Circuit has reasoned that some victim impact evidence may be acceptable in the guilt phase of trial, and prosecutors are entitled to some latitude in evoking the impact on the victim in closing arguments. *Ibid.*

In this case, the prosecutor's remarks were brief. They comprised only a small portion of the opening statement and closing argument. Although the remarks emphasized the impact of the crime on Mr. Bradshaw, the remarks did not ask the jury specifically to convict the petitioner based upon their sympathy for Mr. Bradshaw. In the opening remarks, the prosecutor was entitled to describe the injuries that the victim suffered because the charges involved assault with intent to do great bodily harm. The remarks made during closing argument are more problematic because they had no bearing on the disputed issue in the case: whether the petitioner acted in self-defense. However, the Sixth Circuit reasoned in *Byrd* that a prosecutor should be allowed some latitude in summation. *Byrd*, 209 F.3d at 532. The Court also notes that the trial court instructed the jury not to let sympathy or prejudice influence its decision. The Court concludes that defense counsel did not act unreasonably in failing to object to the remarks made in opening statement, and although he should have objected to the prosecutor's sympathy-evoking statements made in closing argument, there was insufficient prejudice to render the trial fundamentally unfair. Therefore, the petitioner has not demonstrated cause and prejudice to overcome the procedural default.

2.

-19-

In his third claim of prosecutorial misconduct, the petitioner alleges that the prosecutor improperly elicited testimony that the petitioner, a sixteen-year-old, was unemployed and improperly referenced this testimony in his closing argument.

In asserting that the prosecutor's conduct was improper, the petitioner relies entirely on Michigan state law. In *People v. Henderson*, 408 Mich. 56, 289 N.W.2d 376 (1980), the Michigan Supreme Court held that "[e]vidence of poverty, dependence on public welfare, unemployment, underemployment, low paying or marginal employment, is not admissible to show motive." *Id.* at 66, 289 N.W.2d at 380. However, this Court will not grant habeas relief based upon a perceived error of state law, unless the error "so perniciously affect[ed] the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Defense counsel should have objected to this questioning and argument. However, the references to the petitioner's employment status were brief and isolated. The prosecutor did not urge the jury to infer the petitioner's guilt based upon his financial status. On the contrary, the prosecutor contrasted the employment of the victim with the unemployment of the petitioner to cast doubt on the petitioner's story that he met the victim to obtain drugs from the victim. Moreover, given the petitioner's young age, the potential prejudice associated with unemployment was much less than may have attended similar testimony regarding an older defendant's unemployment.

The Court concludes that the prosecutor's improper conduct in eliciting this testimony did not deprive the petitioner of his right to due process and the petitioner was not prejudiced by defense counsel's failure to object to these statements. Therefore, the doctrine of procedural default bars relief in this instance as well.

-20-

3.

In his fourth claim of prosecutorial misconduct, the petitioner argues that the prosecutor improperly elicited testimony regarding Jason Washington's absence and flight. In his opening statement, the prosecutor stated that he anticipated that Mr. Washington would be returned "reluctantly" from the State of Washington to testify. Trial Tr., 10/6/1998, at 38. The prosecutor stated that Washington had been on the run. The prosecutor questioned Washington's mother and sister regarding Washington's whereabouts. Washington's sister testified that Washington was in jail in the State of Washington and had left Michigan three to four weeks prior to the start of the petitioner's trial. Washington's mother testified that she rented a car for him so that he could drive to the State of Washington. Tina Tate also testified that Washington was in the State of Washington. In his closing argument, the prosecutor argued that Washington fled Michigan because he did not want to give testimony that would have incriminated the petitioner.

In support of his claim that the prosecutor's conduct in eliciting this testimony and addressing Washington's absence was improper, the petitioner cites a single Michigan Court of Appeals case, *People v. Jackson*, 125 Mich. App. 251 (Mich. Ct. App. 1983). In *Jackson*, the court of appeals held that evidence of an accomplice of co-conspirator's flight is generally inadmissible to show a defendant's guilt unless it is "so closely connected with the transaction as to be admissible as *res gestae*." *Id.* at 256 (quoting 22A C.J.S. Criminal Law, § 767(g), p. 1152).

The petitioner has failed to show that the testimony regarding Washington's departure from Michigan was inappropriate or that it so infected the entire trial as to deprive the petitioner of his right to a fair trial. Based upon the prosecutor's opening statement, it is apparent that he believed Washington would testify at trial. Washington, however, did not testify. The reason for his absence

-21-

is not apparent from the record.  Washington had contact with the petitioner both before and after the shooting.  It was proper for the prosecutor to elicit testimony as to Washington's whereabouts to explain his absence from trial.  Furthermore, the prosecutor did not ask the jury to infer the petitioner's guilt based upon Washington's absence.  In closing arguments, the prosecutor simply argued that Washington and the petitioner's relatives who testified at trial had spoken to the petitioner after the crime and were trying to protect him.

The Court concludes that defense counsel's performance was not deficient for not objecting to the prosecutor's conduct regarding Washington's absence from the jurisdiction.  Ineffective assistance of counsel does not serve as cause to excuse the procedural default.

4.

Next, the petitioner claims that the prosecutor engaged in misconduct when he introduced evidence of the "hit-and-lick" practice, which was allegedly irrelevant and unfairly prejudicial. The prosecutor argued that the petitioner intended to perform a "hit-and-lick" in his transaction with Bradshaw; that is, that the petitioner intended to take money from Bradshaw without handing over the drugs for which Bradshaw ostensibly had paid. The prosecutor used the term "hit-and-lick" in his opening statement. The prosecutor asked Detective Schuur to explain the term. Detective Schuur explained the term and testified that the term was used in his conversation with the petitioner's mother, Tina Tate. The petitioner argues that the term was never connected to the petitioner, and therefore its admission was irrelevant and unfairly prejudicial.

Although no testimony was presented that the petitioner used the term "hit-and-lick," the conduct described by the term formed the prosecutor's theory of the case. The prosecutor presented sufficient evidence for a jury to find that the petitioner intended to take money from Bradshaw without giving Bradshaw the drugs for which he was paying. The Court finds that the prosecutor's labeling this behavior with the term "hit-and-lick" did not amount to misconduct and therefore counsel was not ineffective for failing to object to its use.

5.

The petitioner next claims that the prosecutor committed misconduct when he misstated the petitioner's testimony during his closing argument. The Court has reviewed the prosecutor's closing statement and the petitioner's testimony, and the Court concludes that the prosecutor fairly characterized the testimony in his closing argument. The prosecutor argued that the jury should draw reasonable inferences from the petitioner's testimony. For example, the prosecutor argued that

-23-

the petitioner's claim that he knew the technology existed to trace the source of bullets should not be believed. The prosecutor argued that the petitioner was unaware of this fact and therefore that he thought he could commit this crime without being prosecuted. "[A] state's attorney is free to argue that the jury should arrive at a particular conclusion based upon the record evidence, including the conclusion that the evidence proves the defendant's guilt." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999). To the extent that the prosecutor asserted that the petitioner admitted that he may have gotten $100 from the victim the day of the shooting, this misstatement of the testimony is minor. The prosecutor raised this issue to emphasize that the petitioner robbed the victim instead of engaging him in a drug transaction.

The trial court cautioned the jury that the lawyers' statements and arguments are not evidence and advised the jurors that they should accept only those things that lawyers say which are supported by the evidence. The petitioner has failed to show that the prosecutor's arguments deprived him of a fair trial or that defense counsel was ineffective for failing to object to these statements. The cause-and-prejudice requirement has not been demonstrated.

6.

Next, the petitioner claims that the prosecutor committed misconduct and disparaged defense counsel by constructing his objections during defense counsel's cross-examination of complainant Eugene Bradshaw in a way to imply that defense counsel was behaving inappropriately. The petitioner also claims that the prosecutor accused defense counsel of manufacturing the petitioner's testimony.

Although the prosecutor did make some comments about defense counsel's trial tactics, the comments were insufficient to constitute misconduct. The comments primarily occurred during

-24-

2:03-cv-10056-DML   Doc # 13   Filed 08/22/06   Pg 25 of 26   Pg ID 102

objections to defense counsel's cross-examinations of Eugene Bradshaw. The prosecutor's objections were lengthy, but considering the duration of the Bradshaw cross-examination they were not unreasonable in number, nor were they frivolous or intentionally vexatious. The objections were overruled and defense counsel was ultimately allowed to ask his questions. The Court finds that the prosecutor's conduct during Bradshaw's cross-examination did not cause the trial to be unfair.

The petitioner also claims that the prosecutor maligned defense counsel during closing argument by accusing defense counsel of constructing a defense designed to mislead or deceive the jury. The prosecutor remarked that the petitioner's testimony that he intended to "barter" with the victim for drugs was "clever, it's a defense tactic, it's designed to mislead you. Do you think Demeatrius Tate brought the word 'barter' to defense counsel? No. Defense counsel knows that Mr. Tate is unemployed. He doesn't have money. So he wants to say this barter thing came up." Trial Tr., 10/14/1998, at 106. The Court does not condone the prosecutor's remarks. They were improper and deflected the jurors' attention from a fair consideration of the evidence. However, the case against the petitioner was strong, and in the context of the trial as a whole, the Court finds that the prosecutor's comments did not deprive the petitioner of his right to a fair trial. The petitioner was not prejudiced by defense counsel's failure to object to this statement, and cause and prejudice for the procedural default has not been demonstrated.

7.

Finally, the petitioner alleges that the cumulative effect of the several instances of prosecutorial misconduct deprived him of a fair trial. The Court does not agree. The state court's findings that the errors did not render the petitioner's trial unfair was not contrary to or an unreasonable application of Supreme Court precedent. The claims not addressed specifically by the

-25-

state court do not in combination undermine confidence in the outcome of the case.  Furthermore, even the cumulative effect of all the prosecutor's statements do not amount to prejudice so great that, but for counsel's failure to object to these statements, the result of the proceeding would have been different.  The petitioner has not shown that counsel was ineffective and accordingly he has not established cause and prejudice for his procedural default of the prosecutorial misconduct claims.  Nor has the petitioner shown ineffective assistance of counsel as a free-standing claim for habeas relief.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 22, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 22, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS